UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JODI LYNNE POWERS, et al., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:16 CV 491 JMB ) |
| WIRELESS HORIZON, INC., et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

On April 8, 2016, Defendant Robert G. Linzoain ("Linzoain") removed this cause of action from the Circuit Court of St. Charles County, Missouri, citing diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Shortly after the matter was removed to this Court, Jodi Lynne Powers, the wife of Decedent Martin Powers ("Decedent"), individually and as next friend for their child, D.A.P. (collectively "Plaintiffs"), filed a Motion to Remand (ECF No. 18), requesting that the matter be remanded back to state court. Linzoain opposes the motion, and the issues are fully briefed. All matters are pending before the undersigned United States Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c).

### I. Procedural Background

On March 8, 2016, Plaintiffs filed a Petition for Damages for Wrongful Death ("Petition") in the Circuit Court of St. Charles County, Missouri, arising from the collapse of a communications tower on March 25, 2014, in Pottawatomie County, Kansas, which killed

Decedent and Mark Garner ("Garner"), his co-worker.[1]  (ECF No. 1-1)  Both Decedent and Garner filed earlier lawsuits arising out of the same accident.  Garner v. Union Pacific Railroad Co., et al., 4:15 cv 733 AGF ("*Garner I*"); Powers, et al. v. Union Pacific R.R. Co., et al., Cause Number 4:15 cv 955 AGF ("*Powers I*").

At the time of the collapse, Decedent was employed by Wireless Horizon, Inc. ("Wireless) as a tower climber.  The Petition states claims for co-employee liability for wrongful death against Rick Heisler ("R. Heisler") (Count I), Troy Heisler (Count II) ("T. Heisler"), Linzoain (Count III), Damion Ripple ("Ripple") (Count IV), Jason Cooper ("Cooper") (Count V), Joshua Hackmann ("Hackmann")[2] (Count VI), conduct with the specific purpose of injury against Wireless (Count VII), and punitive damages against all defendants (Count VIII).  (Id. at ¶¶ 33-105)  All the named parties, except for Linzoain, are Missouri residents.  (Id. at ¶¶ 1-10)  Linzoain is a resident of the State of Arizona.  (Id. at ¶ 7)

Removal in this case was premised on diversity jurisdiction and the perceived amount in controversy, which requires an amount greater than $75,000 and complete diversity of citizenship among the litigants, 28 U.S.C. § 1332(a).  Linzoain invoked this Court's diversity jurisdiction, averring that the Missouri Defendants were fraudulently joined and so their Missouri citizenship has no bearing and must be disregarded by this Court in determining diversity jurisdiction.  Defendant Linzoain asserts no other basis for federal jurisdiction.  28 U.S.C. § 1332(a).

---

[1] A companion case involving Decedent's co-worker, with substantially identical issues, is currently pending before the Honorable Audrey G. Fleissig in Richardson, et al. v. Wireless Horizon, Inc., et al., Cause Number 4:16 cv 492 AGF.

[2] Defendants R. Heisler, T. Heisler, Ripple, Cooper, Hackmann, and Wireless will be collectively referred to as the "Missouri Defendants".

## II. **Factual Background**

For purposes of the motion now before the Court, the record as set forth in the Petition and the exhibits filed by the parties establishes the following facts.[3] Plaintiffs' wrongful death claims arise from the collapse of a communications tower on March 25, 2014, in Pottawatomie County, Kansas, which killed Decedent and Garner. (Id. at ¶¶ 3, 13) At the time of the collapse, Decedent, Linzoain, Garner, R. Heisler, T. Heisler, Ripple, Cooper, and Hackmann were employed by Wireless, which was a subcontractor working on behalf of Union Pacific Railroad Company ("Union Pacific"), the owner of the communications tower. (Id. at ¶¶ 15-17) Decedent had been working for Wireless for less than two months and Garner less than five months. (Id. at ¶ 22) While employed by Wireless, Decedent worked nine days in Missouri and fourteen days in Kansas. (ECF No. 22-2) R. Heisler,[4] as President of Wireless, signed the contract with Sabre Towers for demolition of the old tower and construction of the new tower. (ECF No. 1-1 at ¶ 2) T. Heisler, the safety manager, trained the crews and inspected equipment off-site. (Id. at ¶¶ 6, 20) Linzoain was the tower foreman/site supervisor with 20 years' experience. (Id. at ¶¶ 7) Ripple was the winch truck driver at the job worksite. (Id. at ¶ 8) Cooper, a corporate vice-president and the project manager, was responsible for lining up vendors and delivering equipment and materials to the tower deconstruction site. (Id. at ¶¶ 9, 18) Hackmann was the project administrator for the tower deconstruction project. (Id. at ¶¶ 10, 19)

---

[3]Courts may consider documents submitted after the notice of removal, including those attached to the subsequent motions, when appropriate. Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969).

[4]R. Heisler, Linzoain, Cooper, and T. Heisler are also shareholders of Wireless.

The crew working at the job site dismantling the tower included Decedent and Garner, climbers on the tower, Linzoain, the foreman, and Ripple, the winch operator. (Id. at ¶ 21) As part of the deconstruction process of one of the old towers, the workers were disconnecting a ten-foot diameter dish located at an elevation of 240 feet, installing a gin pole[5] on the tower, then lowering the dish, and beginning the dismantling of the old tower, section by section, with the assistance of the gin pole. (Id. at ¶¶ 23-24) A wire rope sling was wrapped around one of the tower legs without any protection and connected to the top block for jumping the gin pole. (Id. at ¶¶ 25-26) The legs of the tower consisted of steel angles, including legs, diagonals, and struts with sharp edges. (Id. at ¶ 25) The Petition states that the wire rope sling supporting the gin pole and wrapped around one of the tower legs was damaged and dangerous before it was first used on the tower deconstruction project and before it was used on March 25, 2014, the day of the accident. (Id. at ¶¶ 27-28)

At approximately 9:30 a.m. on March 25, 2014, Garner was located above the gin pole near the top of the tower, and Decedent was located approximately twenty feet below the pole. (Id. at ¶ 30) While the gin pole was in the process of being jumped, the wire rope sling broke, causing the gin pole to fall, the tower to collapse, and both Decedent and Garner to fall to the ground to their deaths. (Id. at ¶¶ 30-31)

A commercial insurance supervisor at Zurich American Insurance Company of Illinois ("Zurich") filed a Report on Injury with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation ("Missouri Workers' Compensation"), on behalf

---

[5]The twelve-inch triangular gin pole was sixty feet long and comprised of three sections, twenty feet each.

of Decedent after the accident. (ECF No. 19-1) A Claim for Compensation was filed on behalf of Decedent with the Missouri Division of Workers' Compensation. (ECF N0. 19-7) In the Answer to Claim for Compensation completed by an attorney for Zurich, Wireless and Zurich admitted that "employer and employee were operating under and subject to the terms and provisions of the Missouri Workers' Compensation Law and that all liability, if any, of said employer under said law was fully insured by the above named insurer." (ECF No. 19-8 at 1) Wireless, as Decedent's insured, reported a claim with Zurich on the day of the accident. (ECF No. 19-9)

In his deposition, R. Heisler testified that all workers' compensation benefits available to Decedent have been paid through the Missouri Division of Workers' Compensation, and Wireless has not filed for any benefits in Kansas stemming from Decedent's death. (ECF No. 19-3 at 15-18) R. Heisler's deposition testimony establishes that Wireless' employees were paid in Missouri and subject to Missouri employment taxes; T. Heisler trained the crew for the tower deconstruction project; Wireless dispatched Decedent from Missouri to job sites; and Wireless did not have to purchase any new insurance or make any modifications to existing coverage for the tower deconstruction project. (Id. at 15-16, 39, 41, 63, 65, 89,103, 128-35; ECF No. 19-6 at 65) R. Heisler further testified that Wireless has several workers' compensation insurance policies for various states including Kansas and Missouri. (Id. at 14)

In his deposition, Ripple testified that on March 23, 24, or 25, 2014, either Garner or Linzoain would have been responsible for checking the rigging and inspecting the wire slings, and they had input in selecting the sling to be used on the gin pole. (ECF No. 22-5 at 15, 46-47)

Ripple also testified that Linzoain was competent to make sure the slings were safe, that the rigging was being done correctly, and that the procedures were being followed based on his twenty years of experience. (Id. at 16)  Although Ripple was not 100% certain, he thought Linzoain last looked at the rigging of the gin pole the morning of the accident. (Id. at 21)

The Daily Safety Inspection Reports dated March 24 and 25, 2014, show that the equipment and rigging were inspected in Kansas. (ECF No. 22-4)

In a report titled *Investigation of the March 25, 2014 Failure of Gin Pole Rigging, and Collapse of Cellular Towers at Blaine, KS,* published by U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") in August 2014, OSHA found that the acts and omissions by Wireless at the job site played a substantial part in the wrongful death of Decedent. (ECF No. 19-2)  In relevant part, OSHA found that the tower collapse was caused by the failure of the rope swing, the failure to inspect the tower for structural integrity, and the poor management of the job site left to the discretion of the foreman. (Id. at 35)

### III. Legal Standards and Summary of Parties' Arguments

Linzoain removed the instant case to this Court premised on diversity jurisdiction, averring that the Missouri Defendants were fraudulently joined such that their Missouri citizenship must be disregarded by this Court in determining diversity jurisdiction.  Linzoain asserts no other basis for federal jurisdiction.  28 U.S.C. § 1332(a).

Title 28, United States Code, Section 1441(b) allows a defendant to remove a civil action from state court to federal court based on diversity jurisdiction only if none of the properly joined defendants are citizens of the state in which the original action is filed.  Applied here, there is no

removal jurisdiction over this case if one of the defendants is a citizen of Missouri. 28 U.S.C. § 1441(b). Linzoain, as the party invoking jurisdiction, bears the burden of proving that all prerequisites to jurisdiction are satisfied. Central Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009). Removal statutes are strictly construed, and any doubts about the propriety of removal and the existence of federal jurisdiction are resolved in favor of remand. Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968 (8th Cir. 2007).

"[A] plaintiff cannot defeat a defendant's right of removal by fraudulently joining a defendant who has no real connection with the controversy." Knudson v. Systems Painters, Inc., 634 F.3d 968, 976 (8th Cir. 2011) (internal quotation marks and citation omitted). "The purpose of this exception is to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court." Id. (cited source omitted). "Ordinarily, to prove that a plaintiff fraudulently joined a diversity-destroying defendant, [the Eighth Circuit Court of Appeals has] required a defendant seeking removal to prove that plaintiff's claim against the diversity-destroying defendant had 'no reasonable basis in fact and law.'" Knudson, 634 F.3d at 977 (quoting Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003)). Under this standard, "if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Filla, 336 F.3d at 810 (internal quotations marks omitted). Joinder is not fraudulent where "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." Id. at 811.

As the Eighth Circuit explained in Filla,

> [T]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor. However, in its review of a fraudulent-joinder claim, the court has no responsibility to definitively settle the ambiguous question of state law.

Id. (internal citation omitted) The Eighth Circuit has instructed that "where the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question ... but simply to remand the case and leave the question for the state courts to decide.'" Id. (quoting Iowa Pub. Serv. Co. v. Medicine Bow Coal Co., 556 F.3d 400, 406 (8th Cir. 1977)).

### A. Notice of Removal and Prior Rulings of This Court

On April 8, 2016, Linzoain filed a Notice of Removal. In his Notice of Removal, Linzoain concedes that Wireless is a Missouri corporation with its principal place of business in Missouri and the other defendants are Missouri residents. Linzoain argues that the citizenship of the Missouri Defendants does not destroy diversity and should be disregarded, in that the Missouri Defendants were fraudulently joined. Linzoain argues that there exists no basis in fact or law for the Court to exercise jurisdiction over Plaintiffs' claims for co-employee liability because these tort claims are barred by the exclusivity provision of the Kansas Worker's Compensation Act.

Linzoain bases the removal on several facts set forth in his Notice of Removal. (ECF No. 1) Linzoain asserts that the Missouri Defendants need not consent to or join in the Notice of Removal because they were fraudulently joined. Linzoain contends that the issue of fraudulent joinder has already been addressed in another wrongful death case involving similar claims for

damages based on the same facts by the same Plaintiffs against Union Pacific, Sabre Industries, Inc., Sabre Communications Corp. (collectively "Sabre"), Wireless, and John Does 1-5, never served but identified as co-employees of Decedent in that case. Powers, et al. v. Union Pacific R.R. Co., et al., Cause Number 4:15 cv 955 AGF, 2015 WL 7352282 (E.D. Mo. Nov. 20, 2015) ("*Powers I*"). That action was removed to this Court on the basis of diversity jurisdiction. In *Powers I*, the removing defendant, Union Pacific, alleged that Wireless, the only non-diverse defendant, was fraudulently joined to destroy diversity. Plaintiffs filed a motion to remand the case to state court due to lack of complete diversity between Plaintiffs and Defendants.

On November 20, 2015, Judge Fleissig entered a Memorandum and Order in *Powers I*, that paralleled her earlier decision in Garner v. Union Pacific Railroad Co., et al., 4:15 cv 733 AGF, 2015 WL 7352281 (Nov. 20, 2015) ("*Garner I*"), the companion wrongful death case brought by Decedent's coworker involving substantially identical issues. Powers, 4:15 cv 955, ECF No. 25 at 7. After finding the workers' compensation laws as of Missouri and Kansas conflicted, Judge Fleissig found it necessary to first determine which state's law controlled Plaintiffs' claim against Wireless before deciding whether Wireless was fraudulently joined. Id. at 7-8. Applying the choice-of-law rules of Missouri,[6] which utilizes the "most significant relationship" test, Judge Fleissig found that, although the *Powers I* Plaintiffs and Wireless were all

---

[6]Federal courts sitting in diversity apply the choice-of-law rules of the forum state, the state in which the district court sits. Winter v. Novartis Pharms. Corp., 739 F.3d 405, 410 (8th Cir. 2014) Missouri classifies wrongful death as a tort claim. Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the "most significant relationship" to the occurrence and the parties. Missouri applies the law of the state with the most significant relationship to the occurrence and parties from the Restatement (Second) of Conflict of Laws to determine choice-of-law questions in tort cases. Stricker v. Union Planters Bank, N.A, 436 F.3d 875, 878 (8th Cir. 2006).

Missouri citizens and the employment relationship between Wireless and Decedent was based in Missouri, as in this case, the Court could not find that Missouri had more significant contacts with this matter than Kansas based on the following contacts: the place of injury and the place of Wireless' alleged misconduct were both in Kansas. Id. at 8. Inasmuch as Kansas had the most significant relationship to Plaintiffs' tort claim against Wireless, as, Judge Fleissig concluded that the law of Kansas controlled Plaintiffs' claim against Wireless, and that the claim was barred to the extent it would be so under Kansas law. Id. at 14; See Anderson v. Commerce Const. Servs., Inc., 531 F.3d 1190, 1197-98 (10th Cir. 2008) (finding that a worker's personal injury suit against his general contractor was barred, because Kansas law had the most significant relationship with the parties and the incident, where the injury occurred in Kansas). Under the law of Kansas, because Plaintiffs could have brought a claim under Kansas' Workers' Compensation statute, Judge Fleissig found they were barred from bringing a tort claim against Wireless and could only obtain recovery through the state's workers' compensation system. Id.; Anderson, 531 F.3d at 1192-93 ("According to the Act, an employer cannot be held liable for negligence if plaintiff can collect benefits for the injury through the state workers' compensation system."). Because there was no reasonable basis for predicting that Kansas law might impose liability on Wireless, Judge Fleissig concluded that Wireless[7] was fraudulently joined. Id. at 15. Thus, Judge Fleissig

---

[7] The Court notes that Wireless never entered an appearance in the *Powers I* or *Garner I* cases or filed any responsive pleadings therein, despite having been served and the time for doing so had passed. Indeed, in *Garner I*, Judge Fleissig noted "that it has been several months since Wireless was served in this matter, and that, despite Wireless's failure to appear in its own defense, Plaintiffs have not moved for an entry of default judgment against it. Consequently, it appears that Plaintiffs may never have had a good faith intention to prosecute their claim against Wireless, which further supports a finding of fraudulent joinder." (Powers, 4:15 cv 733 AGF, ECF No. 31 at 15)

determined that removal had been proper because of Wireless' fraudulent joinder and that Plaintiffs' claims were barred by the exclusivity provision of the Kansas Workers' Compensation Act to the extent the claims would be so under Kansas law. Id. Judge Fleissig dismissed without prejudice Plaintiffs' claim against Wireless, finding that the Court lacked subject matter jurisdiction over their claim. Id. at 15-16.

B. **Motion to Remand and Responsive Briefs Thereto**

In their Motion to Remand, Plaintiffs argue that Wireless and the Missouri Defendants were not fraudulently joined and Linzoain has failed to prove that Plaintiffs' claims against the diversity-destroying defendants have no reasonable basis in fact and law. In support, Plaintiffs argue that Wireless has admitted that, during the tower deconstruction project, Wireless and its employees were operating under and subject to the terms and provisions of the Missouri Workers' Compensation law. Moreover, Plaintiffs contend that the Missouri choice-of-law principles dictate that Missouri law governs whether Plaintiffs may prevail against Wireless and the other co-employee defendants. Plaintiffs note that all of the other defendants are Missouri residents; Decedent was a Missouri resident; Decedent's employment was centered in Missouri; a significant amount of the tortious conduct leading to Decedent's death occurred in Missouri; Wireless is a Missouri corporation; and the parties fully expected Missouri Workers' Compensation law to apply to all of their claims. Plaintiffs also contend that, when making her decision in *Powers I*, Judge Fleissig did not have all the evidence showing the significant relationship Defendants had with Missouri, citing the deposition testimony of R. Heisler wherein he admitted that all of the workers' compensation benefits applied to Plaintiffs were through the Missouri Division of Workers' Compensation. Moreover, Plaintiffs contend that through discovery, they have found

the following additional contacts with Missouri showing Missouri has more a significant relationship with this matter than Kansas: the filing of the Report of Injury in Missouri by Wireless; Decedent was paid in Missouri; Decedent was trained in Missouri; Wireless dispatched Decedent to jobs from Missouri; Wireless' employees paid Missouri employment taxes; and Defendants' tortious conduct allegedly occurred in Missouri.

In response,[8] Linzoain notes that, following the dismissal of Wireless from *Powers I*, Plaintiffs filed the instant action against Wireless and six Wireless employees. Linzoain contends that this Court has already considered and ruled upon the same issues in *Powers I*. Linzoain contends that the doctrine of collateral estoppel precludes Plaintiffs from relitigating the same issues decided by this Court in *Powers I*, namely whether Kansas law applies to Plaintiffs' claims, whether Plaintiffs' tort claims are barred by the Kansas Workers' Compensation exclusivity rule, and whether the Missouri Defendants are fraudulently joined in this action. Linzoain argues that the following factors favor application of collateral estoppel: the issue decided in *Powers I* is the same issue presented in this case, namely fraudulent joinder; the prior adjudication resulted in judgment on the merits of that issue; Plaintiffs, here the parties against whom collateral estoppel is asserted, were Plaintiffs in the earlier suit; and Plaintiffs had a full and fair opportunity to litigate the issue in *Powers I*.

In the alternative, Linzoain contends that Kansas law should govern because Kansas has the most significant relationship to Plaintiffs' tort claims. First, the place of injury was in Kansas, and the place of the Missouri Defendants' alleged misconduct was primarily in Kansas, including

---

[8]Missouri Defendants have filed a Motion to Join Defendant Linzoain's Response in Opposition to Plaintiffs' Motion to Remand. (ECF No. 23) Plaintiffs filed a responsive pleading in opposition. (ECF No. 25)

the inspection and selection of the sling. Although Plaintiffs are domiciled in Missouri and Wireless was incorporated in Missouri, Linzoain contends Decedent worked a majority of time outside of Missouri (14 days compared to 9 days), and the workers lived in Kansas during the project. Moreover, Linzoain argues Kansas has a greater interest than Missouri in conduct and injuries occurring within its boundaries, and there is a strong interstate interest in streamlining the choice-of-law analysis for employment related injuries through the general rule that the law of the state in which the injury occurred should normally control. See Restatement (Second) § 146. Linzoain argues that, because Plaintiffs could have brought a claim under the Kansas Workers' Compensation statute, Plaintiffs are barred from bringing a tort claim against Wireless and could only obtain recovery through the state's workers' compensation system. Linzoain notes that, although Plaintiffs had the option to recover against Wireless and its employees under the Kansas Workers' Compensation Act, they chose not to do so, and Kansas law precludes Plaintiffs from obtaining any tort recovery against Wireless and its employees.

In their Reply, Plaintiffs argue collateral estoppel does not apply, because there are new claims, new parties,[9] new parties' conduct and contacts, and Plaintiffs did not have a full and fair opportunity to investigate or to litigate the relevant issues in *Powers I* inasmuch there was no opportunity for discovery.[10] Plaintiffs also argue that there was no a final judgment on the merits

---

[9]The "new parties" are the six named Wireless employees.

[10]The record refutes Plaintiffs' claim that they did not have an opportunity for discovery in *Powers I*. On February 16, 2016, Judge Fleissig granted Plaintiffs' Motion for Voluntary Dismissal of their claims against Union Pacific and Sabre. (Powers, 4:15 cv 955AGF, ECF No. 32) In *Powers I*, Plaintiffs elected to voluntarily dismiss their claims against the additional, diverse defendants, Union Pacific and Sabre, instead of proceeding with the case and attending the scheduled Rule 16 Conference.

in *Powers I*, and they did not have a full and fair opportunity to litigate the issue in *Powers I*. Plaintiffs contend that Wireless' admission that it and its employees were subject to the terms and provisions of Missouri Workers' Compensation law showed a justified expectation of the parties that Missouri Workers' Compensation law would apply.

As to the application of the most significant relationship test, Plaintiffs agree Missouri relies upon Restatement (Second) §§ 145 and 6 for its choice-of-law analysis, but they argue that the Court must evaluate the contacts according to their relative importance with respect to the particular issue in dispute. For instance, Plaintiffs contend that, although the place of injury was Kansas, most of the Wireless employees' R. Heisler, T. Heisler, and Cooper conduct associated with the accident occurred in Missouri at the company's headquarters. Further, Plaintiffs note that they are domiciled in Missouri; Decedent was a Missouri resident, and his employment relationship originated in Missouri; Wireless was incorporated and headquartered in Missouri; and the Missouri Defendants are all Missouri residents. In applying the § 6 factors, Plaintiffs argue that Kansas has no interest in condoning employers' or employees' purposeful unsafe behavior whereas Missouri has an interest in deterring wrongful conduct of a Missouri corporation and deterring wrongful conduct that occurred within Missouri.

In his Surreply, Linzoain contends that the naming and serving of the Wireless employees in the instant action does not alter the Court's choice-of-law analysis in *Powers I*. Linzoain contends that collateral estoppel bars Plaintiffs from relitigating the same issues decided in *Powers I*. Linzoain further asserts that Plaintiffs' wrongful death action arises out of the alleged intentional tortious misconduct that occurred during the tower deconstruction project in Kansas, and as determined in *Powers I*, Kansas has the most significant contacts to Plaintiffs' claims so

Kansas law applies. In support, Linzoain argues that the alleged misconduct giving rise to the accident occurred solely in Kansas, including the failure to properly inspect and select the wire rope sling at the job site in Kansas. Linzoain further argues that the parties could justifiably expect for Kansas to hear any controversies arising from a workplace injury in Kansas. Lastly, Linzoain contends that there is a strong interstate interest in streamlining the choice-of-law analysis for employment-related injuries since the general rule is that the law of the state in which the injury occurred should normally control.

In their Surresponse, Plaintiffs argue that collateral estoppel does not apply inasmuch as they added co-employee liability claims against the Wireless employees in this case. Further, Plaintiffs contend the decision in *Powers I* did not result in a judgment on the merits, and they did not have a full and fair opportunity to litigate the issues. Plaintiffs argue that Linzoain's choice-of-law analysis is fundamentally flawed because he believes the particular issue in dispute is "whether Kansas or Missouri's law applies to Plaintiffs' intentional tort claim resulting in wrongful death," whereas Plaintiffs' assert the particular issue in dispute is "whether or not Plaintiffs have a civil remedy against Decedent's co-employees for his on-the-job wrongful death." According to Plaintiffs, since the issue involves a right of recovery, "the domicile of the parties becomes a highly significant contact, as states have a great interest in applying their own compensation-related laws to their own residents, but very little interest in applying those same laws to non-residents." See Wilson v. Image Flooring, LLC, 400 S.W.3d 386, 398 (W.D. Mo. 2013).[11]

---

[11]This argument is unavailing inasmuch as the Wilson court found the conflict issue involved a right of recovery or question of compensation as opposed to a question of liability, the court applied comparative fault rules for recovery, and this is not the issue before this Court.

### C. Judge Fleissig' Decision in *Garner II*

In Garner v. Wireless Horizon, Inc., et al., 4:16 cv 492 AGF (Feb. 8, 2017) (ECF No. 40) ("*Garner II*"),[12] Judge Fleissig opined that "[i]nteresting and close questions are presented both as to the application of collateral estoppel to this case, and the choice-of-law issue. But the Court believes that a doctrine neither side mentions is properly invoked here to resolve Plaintiffs' motion to remand - the 'mutual defenses doctrine.'" (Id. at 6) Applying the mutual defenses doctrine, Judge Fleissig concluded that remand was especially appropriate because Missouri choice-of-law rules apply the most significant relationship test individually to each particular issue. Further, in light of the additional evidence submitted to the Court that was not presented in *Garner I*, Judge Fleissig opined that she might have reached a different conclusion on the choice-of-law question regarding which state's worker's compensation law governed. Citing how any doubts about the propriety of removal are to be resolved in favor of remand and the close questions with respect to the choice of law and the application of collateral estoppel, Judge Fleissig concluded that "[t]he Missouri courts are in the best position to resolve these issues and determine whether Plaintiffs' state law claims are precluded." (Id. at 8) Therefore, Judge Fleissig remanded *Garner II* to state court.

---

Wilson, 400 S.W.3d at 397-98. In Wilson, the Missouri Court of Appeals noted that, when the issue is the right of recovery, "the domicile of the parties becomes a highly significant contact, as states have a great interest in applying their own compensation-related laws to their own residents, but very little interest in applying those same laws to non-residents." Id. at 398. The court also noted that "[a]lthough '[t]he question of negligence, ... should be determined by the law of the state where the tort occurs because that is the state with the dominant interest concerning that issue.'" Id. at 397-98 (quoting Kennedy v. Dixon, 439 S.W.2d 173, 185 (Mo. banc 1969)).

[12]As in the instant action, all the parties, except Linzoain, are Missouri residents.

**IV.     Discussion**

Having reviewed the parties' arguments, and having considered Judge Fleissig's analysis in *Garner II*, the undersigned concludes that removal was improper and this matter should be remanded to State court.

The mutual defenses doctrine (sometimes referred to as the "common defenses rule") provides that "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant." Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 566, 571 (5th Cir. 2004). As the Fifth Circuit explained:

> [W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder, there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case.

Id. at 574.

Other federal courts have declined to find a resident defendant fraudulently joined based on a defense that would apply equally to nonresident and resident defendants alike. See Fee v. Chesapeake Appalachia, L.L.C., 2014 WL 2769119 (E.D. Ky. June 18, 2014)("the common defense rule requires that the Court remand this case ... if the only basis asserted by a defendant for fraudulent joinder is a common defense - only that is equally applicable to the diverse and non-diverse defendants.") (citation and internal quotation marks omitted); McDowell Pharm. v. West Virginia CVS Pharm., L.L.C., 2012 WL 2192167, *5 (S.D. W.Va. June 14, 2012 ("Under this rule, removal of a state claim is impermissible when the legal theory upon which the defendant's

claim of fraudulent joinder is predicated is a common defense that equally disposes of all defendants to the suit).

As Judge Fleissig noted, the Eighth Circuit has not had an occasion to address the mutual defenses doctrine. No circuit has rejected the mutual defenses doctrine when squarely presented with it. The Seventh Circuit has recognized the common defenses rule as an exception to fraudulent joinder which itself is an exception to the complete diversity requirement. See Walton v. Bayer Corp., 643 F.3d 994, 1001 (7th Cir. 2011) ("[A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants.").

The mutual defenses doctrine, therefore, is a common sense rule that provides that removal of a state claim is impermissible when the legal theory upon which the defendant's fraudulent claim of fraudulent joinder is predicated is a common defense that equally disposes of all defendants. See Huckaby v. Gans & Smith Ins. Agency, Inc., 293 F. Supp. 2d 715, 717 (E.D. Tex. 2003). Moreover, the reasoning behind the common defense doctrine, preserving the limited jurisdiction of federal courts, comports with the federalism issues it raises. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941) (federal courts strictly construe removal jurisdiction because of significant federalism concerns); In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993) (remand is proper if federal jurisdiction is in doubt, as removal jurisdiction implicates significant federalism concerns and must be construed strictly). "All doubts about federal jurisdiction should be resolved in favor of remand to the state court." Block v. Toyota Motor Corp., 665 F.3d 944, 948 (8th Cir. 2011) (citation and quotation omitted).

In this case, the very arguments advanced by Linzoain to show that "there is no reasonable basis for predicting that state law would allow plaintiff to recover against the in-state defendant[s] necessarily compels the same result for [Linzoain]...." Smallwood, 385 F.3d at 574. Thus, under the mutual defenses doctrine, there was no fraudulent joinder of the Missouri defendants.[13]

## V. Conclusion

The Court finds that under the common defenses doctrine, removal was impermissible. Therefore, Plaintiffs' Motion to Remand (ECF No. 18) will be granted. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand this case to state court (ECF No. 18) is **GRANTED**. The Clerk's Office shall take all necessary steps to effectuate the remand.

**IT IS FURTHER ORDERED** that Missouri Defendants' Motion to Join Defendant Robert Linzoain's Response in Opposition to Plaintiffs' Motion to Remand (ECF No. 23) is **GRANTED**.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of February, 2017

---

[13] As Judge Fleissig noted in *Garner II*, applying the mutual defenses doctrine does not resolve the underlying lawsuit. Close questions remain regarding collateral estoppel and choice of law, and the Missouri courts are in the better position to resolve these issues. (See *Garner II*, 4:16 cv 492 AGF (ECF No. 40 at 7-8))